**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FILED by _____ D.C.

APR 2 0 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

**CASE NO.**

**06 - 20975**

SECURITIES AND EXCHANGE COMMISSION,

**Plaintiff,**

v.

**JOHN P. UTSICK,**
**ROBERT YEAGER,**
**DONNA YEAGER,**
**WORLDWIDE ENTERTAINMENT, INC.,**
**THE ENTERTAINMENT GROUP FUND, INC.**
**AMERICAN ENTERPRISES, INC. and**
**ENTERTAINMENT FUNDS, INC.,**

**Defendants,**

/

CIV - UNGARO - BENAGES

U. S. DISTRICT COURT - DE
MISC. CASE # 06-84

MAGISTRATE JUDGE
O'SULLIVAN

## ORDER APPOINTING RECEIVER

**WHEREAS,** Plaintiff Securities and Exchange Commission has filed an agreed motion for

the appointment of a Receiver for Defendants Worldwide Entertainment, Inc. ("Worldwide"),

The Entertainment Group Fund, Inc. ("Entertainment Group"), American Enterprises, Inc.

("American Enterprises") and Entertainment Funds, Inc. ("Entertainment Funds") (collectively

"Defendants"), with full and exclusive power, duty, and authority to: administer and manage the

business affairs, funds, assets, choses in action and any other property of the Defendants;

marshal and safeguard all of the assets of the Defendants; and take whatever actions are

necessary for the protection of the investors; and

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U. S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date _____

WHEREAS, the Commission has set forth grounds for appointment of a receiver over Defendants and represented that Defendants have consented to the appointment of a receiver; and

WHEREAS, the Commission has submitted the credentials of a candidate to be appointed as Receiver of all of the assets, properties, books and records, and other items of the Defendants including any properties, assets and other items held in the names of the Defendants' principals, and the Commission has advised the Court that this candidate is prepared to assume this responsibility if so ordered by the Court; and

WHEREAS, the Defendants have agreed to the appointment of a Receiver;

NOW, THEREFORE, IT IS ORDERED AND ADJUDGED that _Michael I. Goldberg_ is hereby appointed the Receiver for the Defendants, their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:

1.     Take immediate possession of all the Defendants' property, assets and estates, and all other property of the Defendants of every kind whatsoever and wheresoever located belonging to or in the possession of the Defendants, including but not limited to all offices maintained by the Defendants, rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the Defendants wherever situated, and to administer such assets as required to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.     Investigate the manner in which the affairs of the Defendants were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Defendants and their investors and other creditors, as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver

2

may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in the Defendants, including against the Defendants, their officers, directors, employees, affiliates, subsidiaries or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in the Defendants; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et. seq. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

3.    Present to this Court a report reflecting the existence and value of the assets of the Defendants and of the extent of liabilities, both those claimed to exist by others and those which the Receiver believes to be legal obligations of the Defendants;

4.    Appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the Defendants' assets and business, and exercising the power granted by this Order, and approval by this Court at the time the Receiver accounts to the Court for such expenditures and compensation;

5.    Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshals Service or a private security firm;

6.    Defend, compromise or settle legal actions, including the instant proceeding, in which the Defendants or the Receiver is a party, commenced either prior to or subsequent to this

3

Order, with authorization of this Court; except, however, in actions where the Defendants are nominal parties, as in certain foreclosure actions where the action does not effect a claim against or adversely affect the assets of the Defendants, the Receiver may file appropriate pleadings at the Receiver's discretion. The Receiver may waive any attorney-client or other privilege held by the Defendants;

7.    Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of the Defendants and, upon order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

8.    Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence of, sueh expenses and make, or authorize the making of, such agreements as may be reasonable, necessary and advisable in discharging the Receiver's duties;

9.    Have access to and review all mail of the Defendants, and the mail of Jack Utsick, Robert Yeager, and Donna Yeager (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office of the Defendants. All mail addressed to Jack Utsick, Robert Yeager, or Donna Yeager that is opened by the Receiver that, upon inspection, is determined by the Receiver to be personal or attorney-client privileged, shall be promptly delivered to the addressee and the Receiver shall not retain any copy.

**IT IS FURTHER ORDERED** that, in connection with the appointment of the Receiver provided for above:

10.    The Defendants, and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any

4

assets, books, records, or other property of the Defendants shall deliver forthwith upon demand such property, money, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of the Defendants;

11.    All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, the Defendants shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

12.    Unless authorized by the Receiver, the Defendants and their principals shall take no action, nor purport to take any action, in the name of or on behalf of the Defendants;

13.    The Defendants and their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Receiver. The Defendants and their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

14.    The Receiver, and any counsel whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by the Defendants; said amount or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval by the Court;

5

15.    During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined from filing a petition for relief under the United States Bankruptcy Code without prior permission from this Court, or from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of the Defendants;

16.    The Receiver is fully authorized to proceed with any filing the Receiver may deem appropriate under the Bankruptcy Code as to the Defendants;

17.    Title to all property, real or personal, all contracts, rights of action and all books and records of the Defendants and their principals, wherever located within or without this state, is vested by operation of law in the Receiver;

18.    Upon request by the Receiver, any company providing telephone services to the Defendants shall provide a reference of calls from the number presently assigned to the Defendants to any such number designated by the Receiver or perform any other changes necessary to the conduct of the receivership;

19.    Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

20.    The United States Postal Service is directed to provide any information requested by the Receiver regarding the Defendants, and to handle future deliveries of the mail of the Defendants as directed by the Receiver;

21.    No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help

6

whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

22.    No bond shall be required in connection with the appointment of the Receiver. Except for acts of willful misconduct or gross negligence, the Receiver shall not be liable for any loss or damage incurred by the Defendants or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities;

23.    Service of this Order shall be sufficient if made upon the Defendants and their principals by facsimile or overnight courier;

24.    In the event that the Receiver discovers that funds of persons who have invested in the Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds; and

25.    This Court shall retain jurisdiction of this matter for all purposes.

**DONE AND ORDERED** this _20_ day of _April_, 2006, at _Miami_, Florida.

**UNITED STATES DISTRICT JUDGE**

Copies to:

**PAUL C. HUCK**

All counsel and parties of record.

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,
**06 - 20975**

Plaintiff,

v.

JOHN P. UTSICK,
ROBERT YEAGER,
DONNA YEAGER,
WORLDWIDE ENTERTAINMENT, INC.,
THE ENTERTAINMENT GROUP FUND, INC.,
AMERICAN ENTERPRISES, INC. and
ENTERTAINMENT FUNDS, INC.,

Defendants.

CIV - UNGARO - BENAGES

MAGISTRATE JUDGE
O'SULLIVAN

U.S. DISTRICT COURT - DE
MISC. CASE #   06-84

/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Securities and Exchange Commission alleges that:

### I.    INTRODUCTION

1.     The Commission brings this action to enjoin Defendants from violating the

antifraud and registration provisions of the federal securities laws in connection with their sale of

unregistered securities.    From at least 1998 through late 2005 (the "Relevant Period"),

Defendants raised more than $300 million from at least 3,300 investors nationwide through the

sale of securities in the form of loan agreements and units in special-purpose limited liability

companies ("LLCs"). Defendants sold the securities to raise funds for a variety of entertainment

ventures, including the promotion of concerts for well-known artists and groups, theatrical

productions, and investments in arenas and theaters.    Defendant John P. "Jack" Utsick, the



principal of Defendants Worldwide Entertainment, Inc. ("Worldwide") and The Entertainment Group Fund, Inc. ("Entertainment Group"), sold some of the securities through those companies. Two other Defendants, American Enterprises, Inc. ("American Enterprises") and Entertainment Funds, Inc. ("Entertainment Funds"), both controlled by Defendants Robert and Donna Yeager, sold the remaining securities through a network of sales agents. All of the Defendants, without a reasonable basis, represented to prospective investors that their investments would earn annual returns ranging from 15% to 25% and, in some instances, at least 3% of the profits Utsick and his companies generated from the entertainment ventures.

2.      In connection with the offer and sale of these investments, Defendants made material misrepresentations and omissions to potential and actual investors about, among other things, the profitability of their investments, the use of proceeds, the payment of commissions, and the existence of state disciplinary actions.   Defendants' promises of annual returns of 15% to 25% were baseless.  Because all of the funds Utsick received through his corporate entities, Worldwide and Entertainment Group, were commingled in two operating accounts, one for each company, from which all expenses (including Utsick's personal expenses) were paid, there was no basis from which to determine the profitability of any individual project.  Additionally, many of the entertainment projects Worldwide and Entertainment Group promoted or produced lost money and, as a result, it appears that they paid some earlier investors, in part, with funds they raised from new investors.

3.      Defendants also failed to disclose that they used investor funds inconsistently with the purposes they promised investors.  For instance, Utsick opened an options trading account for Entertainment Group through which he has lost almost $10 million of the more than $17 million of investor proceeds he traded.  Additionally, Utsick used investor proceeds to pay

2

for most of his personal living expenses throughout the Relevant Period, including the purchase

of two luxury condominiums in Miami Beach, Florida currently valued at more than $1 million

each. Nor did Defendants disclose that they used at least $7 million of investor proceeds to pay

sales commissions to American Enterprises, Entertainment Funds, the Yeagers and others.

Finally, Defendants did not disclose to investors the existence of state securities actions by

Wisconsin, Missouri and Michigan.

      4.    The Commission seeks a permanent injunction against Defendants to restrain and

enjoin them from any further violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of

1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (b), and 77(q)]; and Section 10(b) and, with

respect to Robert and Donna Yeager, American Enterprises and the Entertainment Funds,

Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b),

78o(a)(1), and Rule 10b-5, 17 C.F.R. § 240]. The Commission further seeks: (1) an order

requiring Defendants to provide a sworn accounting of all proceeds they received, directly and

indirectly, as a result of the conduct alleged herein; (2) an order requiring Defendants to

disgorge, with prejudgment interest, any ill-gotten gains they received; (3) the imposition of civil

penalties against Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)],

and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (4) an order freezing the

assets of Defendants pending resolution of this matter on the merits; and (5) the appointment of a

Receiver over Defendants Worldwide, Entertainment Group, American Enterprises, and

Entertainment Funds.

## II.    **DEFENDANTS**

      5.    Utsick, age 63, is a resident of Miami Beach, Florida. Utsick is the president and

sole shareholder of Defendants Worldwide and Entertainment Group. Utsick is the subject of an

Order of Prohibition the State of Wisconsin issued on December 4, 1997 in connection with Entertainment Group's sale of securities ("Wisconsin Order").   The Wisconsin Order found violations of the registration provisions of Wisconsin's securities laws. Utsick is also subject to a Consent Order issued by the State of Missouri on December 5, 2005, in connection with his sale of Worldwide's investments ("Missouri Order"). The Missouri Order found violations of the securities registration and disclosure provisions of Missouri's securities laws. Utsick has never been registered with the Commission as a broker or dealer.

6.     Robert Yeager, age 64, is a resident of Hahnville, Louisiana. He is a director of American Enterprises and the sole shareholder of both American Enterprises and Entertainment Funds.   He is married to Donna Yeager.  Robert Yeager has never been registered with the Commission as a broker or dealer.    Robert Yeager is also the subject of a Cease and Desist proceeding by the State of Michigan on July 17, 2000 ("Michigan Proceeding").   In the Michigan Proceeding, the sanctions entered against Robert Yeager included revocation of the right to sell exempt securities or engage in exempt transactions in the future without compliance with the registration provisions of the Michigan Uniform Securities Act.

7.     Donna Yeager, age 42, is a resident of Hahnville, Louisiana. She is the president of American Enterprises and the sole director of Entertainment Funds. She is married to Robert Yeager. Donna Yeager has never been registered with the Commission as a broker or dealer.

8.     Worldwide is a Delaware corporation, incorporated in 2003, with its principal place of business in Miami Beach, Florida.   Worldwide reportedly is the second or third largest independent event producer in the world.   Worldwide is also the subject of the Missouri Order. The securities Worldwide offered and sold to the public have never been registered with the Commission.

4

9.      Entertainment Group is a Florida corporation, incorporated in 1994, with its principal place of business in Jupiter, Florida.     Entertainment Group is in the business of producing and promoting concert performances and tours.     Entertainment Group is also the subject of the Wisconsin Order.    The securities Entertainment Group offered and sold to the public have never been registered with the Commission.

10.      American Enterprises is a Florida corporation, incorporated in 2001, with its principal place of business in Aventura, Florida and its corporate offices in Hahnville, Louisiana. American Enterprises is the manager of various LLCs that have raised money to fund entertainment related ventures by Worldwide and the Entertainment Group. The securities American Enterprises offered and sold to the public have never been registered with the Commission.

11.      Entertainment Funds is a Florida corporation, incorporated in 2000, with its principal place of business in Aventura, Florida and its corporate offices in Hahnville, Louisiana. Entertainment Funds is the manager of various LLCs that have raised money to fund entertainment related ventures by Worldwide and Entertainment Group.     The securities Entertainment Funds offered and sold to the public have never been registered with the Commission.   Entertainment Funds is also the subject of the Michigan Proceeding.

## III.    JURISDICTION AND VENUE

12.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)]; and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

13.      Venue is proper in the Southern District of Florida because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange

Act occurred in the Southern District of Florida. The principal place of business for all of the corporate Defendants is the Southern District of Florida. Additionally, Utsick resides in the Southern District of Florida and Robert and Donna Yeager own second homes in the Southern District of Florida.

14.    The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## IV.    THE DEFENDANTS' SECURITIES OFFERINGS

### A.    Overview of the Offerings

15.    Since at least 1977, Utsick, through his companies Worldwide and Entertainment Group, has been involved in the entertainment industry as a promoter and producer of events including concerts by well-known artists, musicals, and other theatrical productions. *Billboard Magazine* currently ranks Utsick as the third-largest independent entertainment promoter in the world.

### *1. Fundraising by the Yeagers, American Enterprises and Entertainment Funds*

16.    In order to fund the operations of Worldwide and Entertainment Group, Utsick obtained the assistance of his close personal friend of more than 35 years, Robert Yeager, and his wife Donna Yeager. Utsick and Robert Yeager, both former airline pilots, first met in the late 1960's. The first Utsick project the Yeagers helped fund was a Yanni concert promotion in 1998. For the first project, the Yeagers raised $122,300 from eleven investors by offering them notes paying 10% interest for only three months.

6

17.    After that initial success, Utsick continued raising funds for his entertainment projects through the Yeagers. Robert and Donna Yeager formed Entertainment Funds, hired sales agents (many of whom were investors), and from 1998 through 2002 raised funds by offering and selling promissory notes to investors in about 50 of Worldwide's projects, including concert tours by Shania Twain, Andrea Bocelli, Elton John, Ricky Martin and Tina Turner, among others.

18.    The structure of the offerings changed in 2001. Instead of offering direct investments in Worldwide projects, American Enterprises began offering equity investments in, or loans to, special-purpose entities whose exclusive business was to loan funds to Utsick through Worldwide and Entertainment Group. American Enterprises created the entities and the Yeagers managed them. American Enterprises sold "Capital Units" or "Membership Units" in each LLC at a purchase price of $1,000 per Unit. Additionally, investors could execute notes with the LLC if they wanted to loan funds through an IRA.

19.    Over the years, the number of sales agents, investors and funds raised grew exponentially as Worldwide's business grew. In one recent offering, Summer 2003 LLC, American Enterprises raised approximately $27 million from almost 600 investors in order to fund various tours including Santana, The Pretenders, Aerosmith and Broadway on Ice. From 1998 through late 2005, Robert and Donna Yeager, through American Enterprises, Entertainment Funds, and their sales agents, raised at least $200 million from more than 2,000 investors nationwide.

### 2.    *Fundraising by Utsick, Worldwide and Entertainment Group*

20.    In addition to raising money through the Yeagers' entities, Utsick also raised millions more directly from investors through Worldwide and Entertainment Group by offering

and selling loan agreements to investors.   During the Relevant Period, Utsick raised at least $100 million by executing loan agreements with approximately 1,000 investors nationwide.

## B.   Solicitation of Investors

21.   Defendants solicited investors primarily through word of mouth.   Many of the investors, airline pilots themselves, quickly spread the news of the lucrative annual returns Defendants offered.   Defendants also lulled investors into rolling over their investments into new projects and telling others about the investments with account statements showing their investment returns.   Many investors also opted to roll over their principal and returns to new Utsick projects based upon the alleged returns generated by their investments.   Additionally, the Yeagers occasionally published a newsletter for current investors touting Utsick's past business successes and discussing future projects.

22.   The Yeagers, through American Enterprises and Entertainment Funds, hired sales agents called "client representatives" or "information resource advisors" who were responsible for contacting previous investors and alerting them to new projects. The Yeagers paid their sales agents about 1% of the money they raised. Utsick also used commissioned sales agents to assist him in his direct fundraising efforts.

23.   Additionally, on at least six occasions, Utsick and the Yeagers also held investor meetings in various locations throughout the United States, including San Francisco, St. Louis and Savannah.   At these meetings, Utsick and the Yeagers told investors and prospective investors about Utsick's past business successes and possible new Utsick ventures.   Utsick answered questions at these meetings and often distributed (and promptly collected) materials for various projects he had in the works.

8

## C.    Defendants' Offering Materials

24.    Although the offering materials Defendants provided to prospective investors changed over the years depending on the project and the particular issuer of the securities, the essential elements of the investment remained the same.  Specifically, the offering materials identified the particular Utsick entertainment project or projects to be funded, provided for a definite term (usually one year), promised a lucrative return of 15% to 25% and, in some instances, promised investors at least 3% of the profits Utsick generated through Worldwide or Entertainment Group in connection with the specific entertainment project.

### 1.    The Yeagers, American Enterprises and Entertainment Funds

25.    From at least 1998 through 2001, the Yeagers offered and sold investments through Entertainment Funds.  Their offering materials consisted primarily of a one-page loan agreement between the investor and/or Utsick or one of his entities. The promissory notes set forth the terms of the agreement, including the name of the specific project, the rate of return and the investment period.

26.    Beginning in 2001, when American Enterprises sold the offerings, the Yeagers and their legal counsel prepared offering materials for each LLC associated with a particular Utsick project. Utsick reviewed these offering materials and dictated the terms of the offering, including how much he needed raised, the rate of return and the investment term.  The American Enterprises offering materials provided that Utsick would use the proceeds of the offering for the promotion and production of specific concert tours and theatrical events by Worldwide or Entertainment Group.  The offering materials further provided that American Enterprises would be the manager of the LLC, and Donna Yeager, as President, was to be responsible for the management and day-to-day operations of the LLC.

9

27.    The offering materials explained that the LLCs loaned the proceeds of the offerings to Worldwide or Entertainment Group pursuant to business loan agreements that were included in the offering packages. The business loan agreements also provided Utsick would use the LLCs loan proceeds for the production of specific concert tours and theatrical events. In return, Utsick and his entities agreed to pay annual returns to the LLC of 15% to 25% and, in some instances, at least 3% of the profits from the entertainment venture.

28.    The offering materials also stated the LLC was not using the services of a placement agent, a dealer, or a broker, and was not paying any commissions or fees in connection with the sale of each "Capital Unit." They further represented that Worldwide or Entertainment Group would reimburse the LLC for all operating expenses up to as much as $100,000 out of the net profits generated from use of the loan proceeds.    Each LLC was scheduled to terminate on or about the same date as the loan maturity date specified by the applicable business loan agreement.

### 2.    *Utsick, Worldwide and Entertainment Group*

29.    From at least 1998 through late 2005, Utsick and his sales agents also raised funds by directly offering and entering into loan agreements in connection with his various projects. Worldwide or Entertainment Group issued the loan agreements directly. In connection with those agreements, Utsick also represented to investors annual returns of 15% to 25%.

30.    No registration statement has been filed or was in effect with the Commission in connection with the securities offered and sold by Worldwide, Entertainment Funds, American Enterprises, or Entertainment Group.

**D.**   **Misrepresentations and Omissions Made in Connection with the Offerings**

### *1.   Misrepresentations Regarding Investment Returns*

31.   Defendants knew, or were reckless in not knowing, that their oral and written representations to investors of 15% to 25% returns and the sources of those returns on their investments did not have a reasonable basis.   Defendants represented they would pay these returns with revenues generated by the specific entertainment project each LLC or promissory note was funding.

32.   During the Relevant Period, however, investor funds loaned to Worldwide or Entertainment Group were commingled in operating accounts maintained by each company and from which each company paid all business and non-business expenses.   Because Worldwide and Entertainment Group did not establish separate accounts and did not maintain separate books and records for each particular offering or related entertainment project, it was impossible for Defendants to determine the profitability of any particular offering.   Accordingly, any representations Defendants made about the profitability of each entertainment project and the source of investor returns lacked any reasonable basis in fact.

33.   Additionally, Defendants paid investors their principal and interest on at least one entertainment project that never came to fruition.   In that instance, Utsick raised more than $16 million in order to produce a series of concerts for Barbra Streisand.   Although Utsick never promoted any concerts for Streisand, he paid at least 30 investors in that project their principal plus 25% interest.   Thus, Utsick could only have paid investors with funds from other offerings.

34.   Moreover, a number of Worldwide or Entertainment Group projects actually lost money.   Utsick nevertheless paid investors their promised returns, in some instances using funds

from other projects. This was not only inconsistent with the uses for investor proceeds as stated in the offering materials, but Defendants failed to disclose this fact to potential investors.

## 2. *Failure to Disclose Use of Proceeds*

35. Defendants also made material misrepresentations and omissions concerning their use of investor proceeds. The offering materials for most of the entertainment projects funded through the LLCs, or directly through the sale of notes, identified the specific entertainment projects that the offering would fund. The materials also limited the use of the funds raised to expenses associated with the named concert or event.

36. Worldwide and Entertainment Group were also contractually required to use the investor funds for expenses associated with the specific concert or event named in the particular offering materials. In most cases, Business Loan Agreements between Worldwide and Entertainment Group and the LLCs contained specific language limiting the use of investor funds to expenses relating to particular concerts and events, and in no instance did Worldwide or Entertainment Group represent that they would use investor funds for expenses other than funding entertainment projects. The Business Loan Agreements representing the intended use of investor proceeds were included in the offering materials provided to investors.

37. Contrary to the representations in the offering materials, Utsick, Worldwide and Entertainment Group did not use investor funds solely for entertainment projects. Worldwide and Entertainment Group commingled all investor funds in operating accounts that they used to repay investors their principal investment plus promised investor returns. In some instances, they used these same accounts to pay principal and interest payments to earlier investors, general corporate expenses, entertainment expenses, payroll, sales commissions, and to fund Utsick's lavish lifestyle.

12

38.    Significantly, Utsick used approximately $17 million of investor proceeds to unsuccessfully trade stock options – a use of proceeds never contemplated or disclosed by *any* of the offerings materials during the Relevant Period. From late 1998 through mid-2005, Utsick, who has never been registered in any capacity with the Commission, failed to disclose that he was using investor funds to aggressively trade stock options. The vast majority of the $17 million was lost as a result of Utsick's trading and only a little over $1.3 million remained in the brokerage account as of the beginning of this year.

39.    Additionally, Utsick used investor proceeds to pay for most of his personal living expenses, including the purchase of two luxury condominiums in Miami Beach currently valued at substantially over $1 million each and Utsick's monthly alimony obligation.

### 3.    *Failure to Disclose Sales Commissions*

40.    Many of the offering materials specifically stated the particular LLC was not using the services of a placement agent, a dealer, or a broker, and was not paying any commissions or fees in connection with the sale of the units. Contrary to these representations, Utsick routinely used investor funds to pay 3% to 5% sales commissions to American Enterprises, Entertainment Funds, and Robert and Donna Yeager, among others. Since 1998, the Yeagers and their entities have received more than $7 million in undisclosed sales commissions.

41.    While in most instances the Defendants did not disclose the payment of commissions to the Yeagers, in several instances the offering materials attempted to disguise the payment of commissions to Robert Yeager by falsely casting him as a "consultant" to Worldwide and Entertainment Group, and stating he would be paid 3% of the loan amount as a "consulting fee." In fact, Robert Yeager's consulting fee was really a commission in connection with the

13

sale of securities offered by the LLCs. Additionally, while the Defendants told investors that the consulting fee paid to Robert Yeager would not reduce the loan amount or the amount Worldwide or Entertainment Group was obligated to repay the LLC under the applicable business loan agreement, Defendants used investor funds to pay these sales commissions.

### 4.    *Failure to Disclose State Securities Actions*

42.    On December 4, 1997, pursuant to a request from the Wisconsin Department of Financial Institutions, Division of Securities, the State of Wisconsin issued the Wisconsin Order of Prohibition against the Entertainment Group, Utsick and one of Entertainment Group's sales agents. The Wisconsin Order found the investments the Entertainment Group sold were securities under Wisconsin law and that Entertainment Group and Utsick sold them without a valid state securities license. Defendants never disclosed the Wisconsin Order to investors, and Defendants' offering materials also failed to disclose any information regarding this Order.

43.    On or about July 17, 2000, the State of Michigan issued an *Order To Summarily Revoke And Deny Exemptions And To Show Cause Why An Order To Impose Civil Penalty And To Cease and Desist Should Not Be Issued Pursuant to the Michigan Uniform Securities Act* against Robert Yeager and Entertainment Group. In this proceeding, the sanctions entered against both respondents included revocation of the right to sell exempt securities or engage in exempt transactions in the future without compliance with the registration provisions of the Michigan Uniform Securities Act. Michigan also obtained compliance undertakings from Entertainment Group before dismissing the action without prejudice.

44.    On December 5, 2005, Utsick and Worldwide entered into the Missouri Order alleging Utsick and Worldwide Entertainment raised almost $3 million from 33 Missouri investors. According to the Missouri Order, during May and September 2004, Utsick and

14

Worldwide offered and sold unregistered securities in the form of Loan Agreements to 33 Missouri investors, promising them the greater of "25% per annum calculated daily" or "20% of WWE's net profits" calculated after one year.    The Missouri Order further stated the offering materials failed to indicate, among other things, that the securities offered were not registered in Missouri and that Worldwide had not disclosed information about its financial condition.

45.    Pursuant to the terms of Missouri Order, Worldwide and Utsick made full restitution to each of the 33 Missouri investors, including a provision for 25% interest.    One of the investments offered to the Missouri investors was the Barbra Streisand tour that Utsick was unable to produce.    As a result, Defendants paid the Missouri investors from money raised from other Worldwide Entertainment investors.

## V.    CLAIMS FOR RELIEF

### COUNT I

### Sale of Unregistered Securities in Violation of Sections 5(a) and 5(c) of the Securities Act

#### (All Defendants)

46.    The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

47.    No registration statement was filed or in effect with the Commission pursuant to the Securities Act and no exemption from registration exists with respect to the securities and transactions described in this Complaint.

48.    Defendants have: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities as described herein, through the use or medium of a prospectus or otherwise; (b) carried securities or causing such securities, as described in this Complaint, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery

after sale; and/or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, as described in this Complaint, without a registration statement having been filed or being in effect with the Commission as to such securities.

49.    By reason of the foregoing, Defendants have, directly and indirectly, violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (b).

## COUNT II

### Fraud in Violation of Section 17(a)(1) of the Securities Act

### (All Defendants)

50.    The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

51.    Defendants have directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

52.    By reason of the foregoing, Defendants have directly and indirectly, violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT III

### Fraud in Violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act

### (All Defendants)

53.    The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

54.     Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, have: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

55.     By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

### COUNT IV

### Fraud in Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

### (All Defendants)

56.     The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

57.     Defendants have directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

17

58.     By reason of the foregoing, Defendants have directly or indirectly violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.

## COUNT V

### Unregistered Broker-Dealer in Violation of Section 15(a)(1) of the Exchange Act

### (Against Defendants Robert Yeager, Donna Yeager, American Enterprises, and Entertainment Funds)

59.     The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

60.     Defendants Robert Yeager, Donna Yeager, American Enterprises and Entertainment Funds, directly and indirectly, by use of the mails or any means or instrumentality of interstate commerce, while acting as brokers or dealers engaged in the business of effecting transactions in securities for the accounts of others, have been effecting transactions in securities, or induced or attempted to induce the purchase or sale of securities, without registering as broker-dealers in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

61.     By reason of the foregoing, Defendants Robert Yeager, Donna Yeager, American Enterprises and Entertainment Funds, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

## VI.     RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that Defendants have committed the violations of the federal securities laws alleged herein.

## II.

### Permanent Injunction

Issue an Order of Permanent Injunction, restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a), 5(c) and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a) and (b), 77q(a); Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b), 17 C.F.R. § 240; and, with respect to Robert and Donna Yeager, American Enterprises and Entertainment Funds, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a)(1), as indicated above.

## III.

### Asset Freeze and Sworn Accountings

Issue an Order freezing the assets of all Defendants until further Order of the Court and requiring the Defendants to file with this Court sworn written accountings.

## IV.

### Appointment of a Receiver

Issue an Order appointing a Receiver over all assets held in the name of Defendants Worldwide Entertainment, Entertainment Group, American Enterprises, and Entertainment Funds to (1) preserve the status quo, (2) ascertain the financial condition of each of these Defendant entities, (3) prevent further dissipation of the property and assets of each of these Defendant entities, to prevent loss, damage and injury to investors, (4) preserve the books, records and documents of each of these Defendant entities, and (5) be available to respond to investor inquiries.

19

## V.

### Records Preservation

Issue an Order requiring Defendants to preserve any records related to the subject matter of this lawsuit that are in their custody or possession or subject to their control.

## VI.

### Disgorgement

Issue an Order directing Defendants to disgorge any profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

## VII.

### Penalties

Issue an Order directing all Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## VIII.

### Repatriation of Investor Proceeds

Issue an Order requiring Defendants to take such steps as are necessary to repatriate to the territory of the United States all funds and assets of investors described in the Commission's Complaint in this action which are held by them or are under their direct or indirect control, and deposit such funds into the registry of the United States District Court for the Southern District of Florida, and provide the Commission and the Court a written description of the funds and assets so repatriated.

20

## IX.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## X.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

April _17_, 2006         By:    _____
                                Alise M. Johnson
                                Senior Trial Counsel
                                Florida Bar No. 0003270
                                Direct Dial: (305) 982-6322
                                *Lead Counsel*

                                Teresa J. Verges
                                Assistant Regional Director
                                Florida Bar No. 0997651

                                Yolanda Gonzalez
                                Branch Chief
                                Florida Bar No. 0107042

                                Andre J. Zamorano
                                Senior Counsel
                                Florida Bar No. 0967361

                                Donna K. Knapton
                                Senior Counsel
                                Florida Bar No. 0103373

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154